UNITED STATES of AMERICA
EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

ROBERT VANHAM,

    Plaintiff,   DEMAND FOR JURY TRIAL

-vs-   Case No.
    Hon.

CREDENCE RESOURCE MANAGEMENT, LLC,
TRANS UNION LLC, and
EXPERIAN INFORMATION SOLUTIONS, INC.,

    Defendants.

## COMPLAINT & JURY DEMAND

### Jurisdiction

1. This court has federal question jurisdiction under the Fair Debt Collection Practices Act, 15 U.S.C. §1692k(d) and 28 U.S.C. §§1331, 1337.

2. This Court has federal question jurisdiction as this case is brought under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*.

3. This court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims.

## Parties

4. The Plaintiff to this lawsuit resides in Milford, Michigan in Oakland County.

5. The Defendants to this action are:

   a. Credence Resource Management, LLC, ("CRMLLC"), a corporation doing business in Michigan.

   b. TRANS UNION LLC, ("TULLC"), a national credit reporting agency.

   c. EXPERIAN INFORMATION SOLUTIONS, INC. ("EISI"), a national credit reporting agency.

## Venue

6. The transactions and occurrences which give rise to this action occurred in Oakland County.

7. Venue is proper in the Eastern District of Michigan.

## General Allegations

8. On or about June 18, 2018, upon information and belief, Directv, LLC extended credit to someone by the name of "Robert Ham" on Strasburg Street in Detroit, Michigan.

9. Upon information and belief, Robert Ham defaulted on his debt to Directv, LLC in the amount of $909.10 ("alleged delinquent debt").

10. On August 13, 2020, Directv, LLC hired CRMLLC to collect the alleged delinquent debt.

11. In October of 2020, Plaintiff discovered that his credit score had taken an immediate and undue turn for the worse due to the fact that CRMLLC had reported to each of the three national credit reporting agencies that Plaintiff owed the alleged delinquent debt; this was an attempt to collect a delinquent debt from Plaintiff which was not his and which CRMLLC knew or should have known was not his.

12. On or about December 21, 2020, Plaintiff sent a dispute letter ("dispute letter") to CRMLLC regarding the alleged delinquent debt and explained that it was not his debt and that he refused to pay it.

13. CRMLLC received the dispute letter on December 26, 2020.

14. The dispute letter required CRMLLC to cease and desist communication with the Plaintiff.

15. In spite of the clear legal requirement that CRMLLC cease and desist communication with Plaintiff after receiving the dispute letter, on or about January 8, 2021, CRMLLC communicated directly with Plaintiff in violation of the FDCPA.

16. In spite of the clear legal requirement that CRMLLC cease and desist communication with Plaintiff after receiving the dispute letter, on January 27, 2021, and in spite of the fact that Plaintiff did not ask CRMLLC to verify the alleged disputed debt, CRMLLC sent a letter in response to the dispute letter to "Robert Ham" at the Plaintiff's address which purported to verify that Plaintiff owed the alleged delinquent debt when he did not; this was clearly a false and misleading statement and it was in an attempt to collect a debt in violation of the FDCPA.

17. In spite of the clear legal requirement that CRMLLC cease and desist communication with Plaintiff after receiving the dispute letter, on January 30, 2021, and in spite of the fact that Plaintiff did not ask CRMLLC to verify the alleged disputed debt, CRMLLC sent a letter in response to the dispute letter to "Robert Ham" at the Plaintiff's address which purported to verify that Plaintiff owed the alleged delinquent debt when he did not; this was clearly a false and misleading statement and it was in an attempt to collect a debt in violation of the FDCPA.

18. Plaintiff has suffered damages as a direct result of CRMLLC's violations of the FDCPA.

19. On or about February 20, 2020, Plaintiff sent a letter to Defendant TULLC ("first letter to TULLC") requesting that it remove the Strasburg, Detroit address from his consumer report as he has never lived at that address, never opened an account there for cable or internet, and had never even been to that address or that street.

20. TULLC received the first letter to TULLC.

21. TULLC, in spite of Plaintiff's first letter to TULLC, continued to report that the Strasburg address was associated with Plaintiff and did not remove it from his consumer report.

22. On or about December 31, 2020, Plaintiff sent a letter to Defendant TULLC ("second letter to TULLC") requesting that it remove the Strasburg, Detroit address from his consumer report as he had never lived at that address, never opened an account there for cable or internet, and had never even been to that address or that street.

23. TULLC received the second letter to TULLC.

24. TULLC, in spite of Plaintiff's second letter to TULLC, TULLC continued to report that the Strasburg address was associated with Plaintiff and did not remove it from his consumer report.

25. TULLC's continued reporting to creditors and debt collectors of the inaccurate information that Plaintiff lived on or was associated with the Strasburg Street address in Detroit was objectively false.

26. TULLC's continued reporting to creditors and debt collectors of the inaccurate information that Plaintiff lived on or was associated with the Strasburg Street address in Detroit harmed the Plaintiff in that it caused an undue decrease to his credit score by linking him to the alleged disputed debt which was not his.

27. TULLC failed to maintain reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit report.

28. TULLC failed to adequately follow the procedures set forth in 15 U.S.C. § 1681i.

29. Plaintiff suffered damages as a result of TULLC's failure to abide by 15 U.S.C. § 1681i.

30. On or about February 20, 2020, Plaintiff sent a letter to Defendant EISI ("first letter to EISI") requesting that it remove the Strasburg, Detroit address from his consumer report as he had never lived at that address, never opened an account there for cable or internet, and had never even been to that address or that street.

31. EISI received the first letter to EISI.

32. EISI, in spite of Plaintiff's first letter to EISI, continued to report that the Strasburg address was associated with Plaintiff and did not remove it from his consumer report.

33. On or about December 31, 2020, Plaintiff sent a letter to Defendant EISI ("second letter to EISI") requesting that it remove the Strasburg, Detroit address from his consumer report as he had never lived at that address, never opened an account there for cable or internet, and had never even been to that address or that street.

34. EISI received the second letter to EISI.

35. EISI, in spite of Plaintiff's second letter to EISI, EISI continued to report that the Strasburg address was associated with Plaintiff and did not remove it from his consumer report.

36. EISI's continued reporting to creditors and debt collectors of the inaccurate information that Plaintiff lived on or was associated with the Strasburg Street address in Detroit was objectively false.

37. EISI's continued reporting to creditors and debt collectors of the inaccurate information that Plaintiff lived on or was associated with the Strasburg Street address in Detroit harmed the Plaintiff in that it caused an undue decrease to his credit score by linking him to the alleged disputed debt which was not his.

38. EISI failed to maintain reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit report.

39. EISI failed to adequately follow the procedures set forth in 15 U.S.C. § 1681i.

40. Plaintiff suffered damages as a result of EISI's failure to abide by 15 U.S.C. § 1681i.

## COUNT I – Fair Debt Collection Practices Act (CRMLLC)

41. Mr. Vanham incorporates the preceding allegations by reference.

42. At all relevant times CRMLLC – in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

43. CRMLLC is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

44. CRMLLC's foregoing acts in attempting to collect this alleged debt against Mr. Vanham constitute violations of the FDCPA.

45. Mr. Vanham has suffered damages as a result of these violations of the FDCPA.

## COUNT II – Michigan Occupational Code (CRMLLC)

46. Mr. Vanham incorporates the preceding allegations by reference.

47. CRMLLC is a "collection agency" as that term is defined in the Michigan Occupational Code, M.C.L. § 339.901(b).

48. Mr. Vanham is a debtor as that term is defined in M.C.L. § 339.901(f).

49. CRMLLC's foregoing acts in attempting to collect this alleged debt against Mr. Vanham constitute violations of the Occupational Code.

50. Mr. Vanham has suffered damages as a result of these violations of the Michigan Occupational Code.

## Count III – Violations of the FCRA

## 15 U.S.C. § 1681 *et seq.* (TULLC)

51. Plaintiff incorporates the preceding allegations by reference.

52. The appearance of the inaccurate account information was the direct and proximate result of TULLC's failure to maintain reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit report in violation of the FCRA, 15 U.S.C. § 1681e(b).

53. TULLC willfully failed to maintain reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit report in violation of 15 U.S.C. §§ 1681e(b) and 1681n.

54. In the alternative, TULLC negligently failed to maintain reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit report in violation of 15 U.S.C. §§ 1681e(b) and 1681o;

55. TULLC willfully failed to maintain reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit report in violation of 15 U.S.C. §§ 1681e(b) and 1681n.

56. As part of the reinvestigation, TULLC was required to notify the furnishers of the disputed account information in a notice.

57. That notice was required to include all relevant information regarding the dispute that the agency has received from the consumer.

58. TULLC failed to include all relevant information regarding the dispute to the furnishers of the disputed account information in violation of the FCRA, 15 U.S.C. § 1681i(a)(2)(A).

59. As part of the reinvestigation, TULLC was required to consider and give due weight to all relevant information submitted by Mr. Vanham.

60. TULLC's failed to properly consider and give due weight to all relevant information submitted by Mr. Vanham in course of the reinvestigation, in violation of the FCRA, 15 U.S.C. § 1681i(a)(5).

61. TULLC's reinvestigation improperly resulted in the reporting of information which TULLC found to be inaccurate, incomplete, unverifiable in violation of the FCRA, 15 U.S.C. § 1681i(a)(5).

62. TULLC has wilfully violated the FCRA, 15 U.S.C. §§ 1681i and 1681n.

63. In the alternative, TULLC has negligently violated the FCRA, 15 U.S.C. §§ 1681i and 1681o.

64. Mr. Vanham has suffered damages as a result of these violations of the FCRA.

## Count IV – Violations of the FCRA

## 15 U.S.C. § 1681 *et seq*. (EISI)

65. Plaintiff incorporates the preceding allegations by reference.

66. The appearance of the inaccurate account information was the direct and proximate result of EISI's failure to maintain reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit report in violation of the FCRA, 15 U.S.C. § 1681e(b).

67. EISI willfully failed to maintain reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit report in violation of 15 U.S.C. §§ 1681e(b) and 1681n.

68. In the alternative, EISI negligently failed to maintain reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit report in violation of 15 U.S.C. §§ 1681e(b) and 1681o;

69. EISI willfully failed to maintain reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit report in violation of 15 U.S.C. §§ 1681e(b) and 1681n.

70. As part of the reinvestigation, EISI was required to notify the furnishers of the disputed account information in a notice.

71. That notice was required to include all relevant information regarding the dispute that the agency has received from the consumer.

72. EISI failed to include all relevant information regarding the dispute to the furnishers of the disputed account information in violation of the FCRA, 15 U.S.C. § 1681i(a)(2)(A).

73. As part of the reinvestigation, EISI was required to consider and give due weight to all relevant information submitted by Mr. Vanham.

74. EISI's failed to properly consider and give due weight to all relevant information submitted by Mr. Vanham in course of the reinvestigation, in violation of the FCRA, 15 U.S.C. § 1681i(a)(5).

75. EISI's reinvestigation improperly resulted in the reporting of information which EISI found to be inaccurate, incomplete, unverifiable in violation of the FCRA, 15 U.S.C. § 1681i(a)(5).

76. EISI has wilfully violated the FCRA, 15 U.S.C. §§ 1681i and 1681n.

77. In the alternative, EISI has negligently violated the FCRA, 15 U.S.C. §§ 1681i and 1681o.

78. Mr. Vanham has suffered damages as a result of these violations of the FCRA.

## Demand for Jury Trial

79. Plaintiff demands trial by jury in this action.

## Demand For Judgment for Relief

*ACCORDINGLY, Mr. Vanham requests that the Court:*

a. *Assume jurisdiction over all claims;.*

b. *Award actual damages.*

c. *Award statutory damages.*

d. *Award punitive damages.*

e. *Award statutory costs and attorney fees.*

        Respectfully Submitted,

        ADAM G. TAUB & ASSOCIATES
        CONSUMER LAW GROUP, PLC

By:   /s/ Adam G. Taub
       Adam G. Taub (P48703)
       Attorney for Robert Vanham
       17200 West 10 Mile Rd. Suite 200
       Southfield, MI 48075
       Phone: (248) 746-3790
       Email: adamgtaub@clgplc.net

Dated: April 1, 2021